Allen *v.* Mack, Appellant.

Argued October 7, 1942. Before SCHAFFER, C. J.;
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Thomas Raeburn White,* with him *C. L. Cushmore,
Jr.,* and *White & Staples,* for appellant.

*Maurice E. Cohen,* with him *Mareline McElwee,* for
appellee.

OPINION BY MR. JUSTICE MAXEY, November 23, 1942:

This is an appeal from a judgment for the plaintiff in an action of trespass to recover damages for personal injuries sustained by the plaintiff in a head-on collision between the automobile which the plaintiff was driving and a truck loaded with ten tons of sugar and operated by the defendant's employee. The collision occurred on Delaware Avenue in Philadelphia, between Spruce and Pine Streets, at about 2 P. M. on October 21, 1941. The plaintiff was driving South on the East side of Delaware Avenue. He claimed that the West side of the avenue was blocked with traffic. This claim was disputed. After trial the jury returned a verdict for the plaintiff in the sum of $11,000. A remittitur was filed reducing the verdict to $9,000 upon which judgment was entered. This appeal followed.

The first question raised is as to the admissibility of a statement made by Prattis, the driver of the defendant's truck, while this driver, who was unhurt, was riding in the automobile of Aaron Barber, which was taking the plaintiff, who was bleeding from the head, to the hospital, after the accident. Barber's testimony was that on the way to the hospital the truck driver "said to me his helper on the truck had called his attention to something on the East side of Delaware Avenue and he had looked there, and when he turned his head he was going right into Mr. Allen's car". As this indicated inattentiveness on the part of the defendant's driver, it was damaging to the defendant. The trial judge did not state on what theory this statement was admitted over defendant's objection but the plaintiff contends that it was admissible as part of the res gestæ.

This statement was not so admissible. The truck driver could have made this statement himself when he was under oath, on the stand, or if he when on the stand had made a statement at variance with the statement quoted by Barber, he could have been contradicted by the latter. For the witness, Barber, to repeat on the witness

stand what Prattis, the truck driver, said to him while they were riding to the hospital was pure "hearsay". The circumstances which made admissible as part of the res gestæ statements which ordinarily would be inadmissible as hearsay are well known and they are absent from this record.

Wigmore on Evidence, 2nd ed., Vol. 3, sec. 1747, page 738, says as to res gestæ: ". . . under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts." In *Commonwealth v. Werntz,* 161 Pa. 591, 597, 29 A. 272, Justice MITCHELL, speaking for this court, quoted with approval the following from 21 Am. & Eng. Ency. of Law, 102: If declarations "are made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thought created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design, they will be admissible as part of the res gestæ."

In most cases where res gestæ declarations have been admitted they were statements made by some one who was himself injured in an accident, or in homicide cases by the person who had been fatally assaulted. In some cases the exclamation of an onlooker at a tragic happen-

ing, made at or immediately after the happening, if the onlooker was talking under such excitement by reason of the happening that his exclamation or statement was obviously spontaneous, has been admitted as a part of the res gestæ.* A res gestæ declaration may be defined as a spontaneous declaration by a person whose mind has been suddenly made subject to an over-powering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties. In a res gestæ declaration the exciting event speaks through the impulsive words of a participant or onlooker. It is in a psychological sense a part of the act itself. The apparent condition of the declarant's mind when the declaration is made is the test of the latter's admissibility as a part of the res gestæ. To make the declaration admissible the state of the declarant's mind as induced by the shock of the occurrence must be such as to integrate his spontaneous declaration exclusively with the occurrence itself.

There is nothing in this record to indicate that the statement of Prattis was made while his mind was under the control of any emotion or shock caused by the occurrence he was talking about. He was unhurt and was engaged in the commendable work of accompanying the bleeding victim of the collision to the hospital. There was no reason why his mind should not have been functioning normally. He apparently was carrying on a conversation with the man who had volunteered to take the injured driver of the automobile to the hospital. His statement was not spontaneous or "explosive". Nothing indicates that he was in a state of physical or mental

* See *Commonwealth v. Fugmann*, 330 Pa. 4 at 16, 198 A. 99.

shock at the time. He was in an ordinary manner giving an account of a past act of his.

In *Moyer v. Pittsburgh, M. & B. Ry.*, 275 Pa. 363, 119 A. 469, cited by appellee, the motorman's declaration, which was admitted as part of the res gestæ, was made "immediately after" a fatal accident caused by the car the motorman was running. In *Thomas v. Penna. Railroad Co.*, 275 Pa. 579, 119 A. 717, cited by appellee, a conductor's statement relative to a fatal accident caused by his train and made "immediately after the accident" was admitted as part of the res gestæ. In support of his contention the appellee's counsel quotes what was said in a dissenting opinion in *Keefer v. Pacific Mutual Life Insurance Company of California*, 201 Pa. 448, 456, 457, 51 A. 366. In that case this court ruled that the statement of the fatally injured man as to how he received his wound was *in*admissible as part of the res gestæ. The excluded statement was made fifteen minutes after the accident and several hundred feet away from its locus. This court said: There "was a marked break in the continuity of events; . . . The act was done; the transaction closed. . . . The impress of spontaneity" had been "removed".

In *Rodgers v. Woodcock Valley Telephone Co.*, 92 Pa. Superior Ct. 445, cited by appellee, an automobile had been struck by a falling telegraph pole and as a result the driver's skull was fatally fractured. "A few minutes afterward a witness, Garner, came along and found the man still in the driver's seat, holding the steering wheel". In reply to the witness' inquiry as to what had happened, the man said: "A pole hit me." This declaration was the spontaneous, verbal out-giving of a perception produced by a tragic event of which the declarant had just been the victim and was therefore a part of the rest gestæ.

According to the witness, Barber, there must have been an appreciable lapse of time between the accident and the truck driver's statement, for he, Barber, was pro-

ceeding in a car behind the Allen car, and after the collision, Barber "pulled up about 35 or 40 feet in back of him and jumped out of" his car "and swung around to give" Allen aid. He opened the door of Allen's car and he and others helped Allen out of the car. Allen was unable to walk, and two men helped Barber "get Allen to Barber's car and put him in it", and the declaration in question was made by the truck driver, Prattis, "on the way to the hospital". Just how long an interval had elapsed between the accident and the declaration and what was the declarant's apparent mental state do not appear. On him who offers a declaration as part of the res gestæ rests the burden of establishing the facts which show that it is a part of the res gestæ.

The remaining question raised by this appeal arose out of the trial judge's overruling of defendant's objection to the following question: "By the way, is it or is it not the custom for automobiles and trucks going north and south to ride both in the west roadway and the east roadway?" The question was answered, "Yes". Section 1004 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS sec. 521 provides that "upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway . . . unless it is impracticable to travel on such side of the highway, and except when overtaking and passing another vehicle, subject to the limitations applicable in overtaking and passing set forth in this act."

It is well settled that a statute cannot be nullified and made inapplicable in a case by proof of a custom which conflicts with it. In *Commonwealth v. Ellis*, 46 Pa. Superior Ct. 72, 78, Judge RICE, speaking for the Superior Court, said: "A custom or usage repugnant to the express provisions of a statute is void." See also *Casey et al. v. Boyer*, 270 Pa. 492, 113 A. 364.

The judgment is reversed with a venire.