**Alberta M. McCURDY, Administratrix of the Estate of Robert A. McCurdy, Deceased, Appellant,**

v.

**GREYHOUND CORPORATION.**

No. 15122.

United States Court of Appeals Third Circuit.

Argued April 23, 1965.

Decided May 18, 1965.

James C. Larrimer, Dougherty, Larrimer & Lee, Pittsburgh, Pa., for appellant.

Randall J. McConnell, Jr., Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., for appellee.

Before McLAUGHLIN, STALEY and SMITH, Circuit Judges.

STALEY, Circuit Judge.

■■ The administratrix of Robert A. McCurdy brought this wrongful death action, alleging negligence on the part of defendant's employee-bus driver. Federal jurisdiction was based solely on diversity of citizenship.[1] The accident allegedly occurred when McCurdy, who was driving along a main street in the city of Pittsburgh, was blinded temporarily by the bright lights of a bus approaching him from the rear. This caused him to crash into a safety island in the center of the street. He allegedly sustained brain damage which led directly to his death four days later. No one but McCurdy saw the accident. The only evidence offered to prove that the bus was responsible for the accident was a statement made by McCurdy to police officers who arrived at the scene shortly after the event occurred. The statement was deemed inadmissible by the district court which then directed a verdict against the plaintiff. Plaintiff's motion for a new trial was denied. As we are convinced that the statement came within the "res gestae" exception to the hearsay rule, we are compelled to reverse and remand for a new trial.

The essential facts can be briefly set forth. Plaintiff's decedent left work in the American Telephone & Telegraph Building in the downtown area of the city of Pittsburgh some time after 11:15 P.M. on June 24, 1962. A short time thereafter the accident happened. Although it is not possible to specify the time of the accident to the minute, it is clear that it must have happened some time between 11:30 and 11:45 P.M. One witness, who testified that he came out of a nearby building shortly after the event occurred, said that the police came within 10 or 15 minutes of his arrival.[2] It was stipulated by Greyhound that a bus left the terminal at approximately 11:30 P.M. This would have placed it at the scene of the accident a few minutes later. The police arrived at 11:45 P.M. They immediately asked McCurdy, who was seated in his car, how it had happened. He said that the lights from the Greyhound bus had caused it.

Testimony of other persons who had observed events from the sidewalk during the time between the accident and the arrival of the police was introduced at the trial to show that McCurdy was strongly under the influence of the event when the police arrived. Robert E. Cooper, a guard in a building adjacent to the street, went outside immediately after the accident. He found McCurdy getting out of the car and asked him what had happened. The only reply was an in-

---

1. Once again this court has been required to inquire into jurisdiction in a diversity case. See Shahmoon Industries, Inc. v. Imperato, 338 F.2d 449 (C.A.3, 1964). The jurisdictional averments in the complaint alleged only that (a) plaintiff and her decedent were citizens of Pennsylvania, and (b) Greyhound is a citizen of Delaware and has an office for the conduct of business in Pittsburgh. Such a set of averments is patently insufficient under the statute. 28 U.S.C. § 1332. Because it was clear that jurisdiction in fact existed, we permitted counsel to stipulate as authorized by 28 U.S.C. § 1653. The matter is one that should,

however, have been taken care of by counsel acting alone or at the insistence of the district court.

2. The District Court, in its opinion denying a new trial, stated that the time which elapsed between the time of the accident and the statement to the police was twenty-five minutes or more. A reading of the record indicates clearly that this was in error. It is quite apparent that the District Court was alluding to the time the decedent assisted the police in making out their report rather than to the time they first arrived which was when the statement in question was made.

comprehensible mumble. According to Cooper's testimony, McCurdy then

"* * * looked at his car and was looking at it and went over to the Union Trust Building [the building in which Cooper worked] then leaned there for a couple of seconds and then walked on toward the Penn-Sheraton Hotel [the next building on the street] * * *."

The police officers who arrived on the scene were in the course of their regular patrol. They had not been called by McCurdy. When they arrived, they found the decedent in the car. At this point, he was still "extremely nervous" and "shooken up".

Over the years the Pennsylvania courts and this court have recognized that a hearsay statement is admissible as part of the "res gestae" if made by a participant in the event during a period when he was, for any reason, incapable of reasoned reflection about the occurrence. Giffin v. Ensign, 234 F.2d 307 (C.A.3, 1956); Campbell v. Gladden, 383 Pa. 144, 118 A.2d 133, 135, 53 A.L.R. 2d 1222 (1955); Commonwealth v. Noble, 371 Pa. 138, 88 A.2d 760 (1952); Allen v. Mack, 345 Pa. 407, 28 A.2d 783 (1942); Broad Street Trust Co. v. Heyl Bros., 128 Pa.Super. 65, 193 A. 397 (1937); Smith v. Stoner, 243 Pa. 57, 89 A. 795, 797 (1914); Uniform Rules of Evidence, Rule 62(4) (b); Model Code of Evidence, Rule 512. Such a statement is trustworthy if made during the period when "considerations of self-interest could not have been brought fully to bear" on the event. 3 Wigmore, Evidence 738 (2d ed.) as quoted in Allen v. Mack, 28 A.2d at 784. In each case the court is required to examine the facts in light of the general principles. Commonwealth v. Noble, supra. Thus, extensive examination of applicable authorities and comparison of decisions based on the analysis of other quite diverse fact patterns is neither necessary nor useful. No arbitrary time or other limits on the operation of the rule have been accepted by the Pennsylvania courts. Campbell v. Gladden, supra; Commonwealth v. Noble, supra; Smith v. State Workmen's Ins. Fund, 140 Pa.Super. 602, 14 A.2d 554 (1940); Commonwealth v. Stallone, 281 Pa. 41, 126 A. 56, 58 (1924).

Examination of the facts before us leads to the conclusion that during the brief period before the police arrived, McCurdy was in such a state of nervousness and shock as to be incapable of reasoned reflection. He muttered incomprehensibly at first. He walked aimlessly down the street and returned to his car. Very shortly thereafter when the police arrived, McCurdy was still noticeably "nervous" and "shooken up". In view of this, there is little danger that he had either the time to reflect or sufficient use of his reason to fabricate and manufacture an account of the accident.[3] In these circumstances, it is clear that the utterance was part of the res gestae and that the question of its credibility should have been submitted to the jury for that body to pass upon.

The judgment of the district court will be reversed and the cause remanded for a new trial.

3. As we indicate in the body of the opinion there was an allegation that the plaintiff sustained brain damage which led to his death four days after the event. A study of the record indicates that the plaintiff did not attempt to establish by medical evidence what the decedent's medical condition was immediately after the accident. This undoubtedly could have been done in view of the alleged consequences of the accident.