**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Tyrone UPSHUR, Appellant.**

Superior Court of Pennsylvania.

Argued April 17, 2000.

Filed Dec. 7, 2000.

Daniel A. Rendine, Philadelphia, for appellant.

Greg A. Rowe, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before McEWEN, President Judge, DEL SOLE, HUDOCK, EAKIN, JOYCE, STEVENS, MUSMANNO, ORIE, MELVIN, and TODD, JJ.

HUDOCK, J.:

¶ 1 This is an appeal from the judgment of sentence entered after Appellant was convicted by a jury of first degree murder, aggravated assault and possessing an instrument of crime.[1] For the reasons that follow, we affirm.

¶ 2 On January 2, 1995, Philadelphia Police Officer Al Foster responded to the scene of a stabbing which had occurred at approximately 6:00 p.m. at 5700 Elmwood Avenue in Philadelphia. The victim, Robert Young, identified his assailant as Terrance Skinner. Officer Foster, accompanied by Young, drove through the neighborhood in an effort to locate Skinner, but was unsuccessful. Officer Foster then took Young to the hospital, where he was treated and released. Later that evening, at approximately 9:00 p.m., Officer Foster received a radio call that Skinner was seen driving his vehicle in the vicinity of the 5500 and 5600 blocks of Elmwood Avenue. Officer Foster responded to the call, as did Philadelphia Police Officers Grant, Pigford and Riddick. The officers arrived at the described location and found Skinner in an automobile with two other individuals, George Richardson and John Green. A crowd, which included Appellant, had formed around the car and its members were threatening Skinner, Richardson and Green.

¶ 3 Young identified Skinner as his assailant, but stated that Richardson and Green were not involved in the stabbing. Skinner was removed from the vehicle, placed in the backseat of a police cruiser and driven away from the scene by Officers Foster and Grant. Nonetheless, the crowd continued to voice threats to Richardson and Green who remained in Skinner's vehicle. Appellant was excessively vocal in his threats to the two men.

¶ 4 Out of concern for Richardson and Green's safety, Officers Pigford and Riddick placed the men in their police car and escorted them out of the area to the nearby Gray's Ferry Bridge. Richardson and Green exited the police vehicle and began to cross the bridge to reach their homes located in South Philadelphia. While crossing over the bridge, they were approached by Appellant, who confronted them, shot Green in the arm and fatally shot Richardson in the back. Green ran to a nearby gas station and contacted the police.

¶ 5 Subsequently, Green identified Appellant from a photo array and Appellant was arrested. A trial before a jury was held on May 12–15, 1997, following which Appellant was convicted of murder in the first degree, possession of an instrument of crime and aggravated assault.[2] On May

---

1. 18 Pa.C.S.A. §§ 2502(a), 2702 and 907, respectively.

2. This was Appellant's third trial on these charges. His two previous trials resulted in

20, 1997, the penalty phase hearing was held on the murder conviction and the trial court imposed a life sentence after the jury was unable to agree on the penalty. On July 22, 1997, following preparation of a pre-sentence and mental health report, Appellant was further sentenced to not less than six months nor more than sixty months' imprisonment for the offense of possession of an instrument of crime, and to not less than five nor more than ten years' imprisonment on the aggravated assault conviction. On July 29, 1997, post-verdict motions were filed. On December 1, 1997, the motions were denied by operation of law. This timely appeal followed.

¶ 6 On appeal, Appellant presents the following issues for our consideration:

I. WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND THUS SHOCKED ONE'S SENSE OF JUSTICE?

II. WHETHER [THE] TRIAL COURT ERRED IN REFUSING TO PERMIT THE TESTIMONY OF POLICE OFFICER BRIAN SPROWAL CONCERNING THE STATEMENT OF AN EYE WITNESS [SIC] TO THE INCIDENT AS AN "EXCITED UTTERANCE" EXCEPTION TO THE HEARSAY RULE?

III. WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST [A] "KLOIBER" CHARGE THAT THE IDENTIFICATION TESTIMONY OF MR. JOHN GREEN MUST BE RECEIVED WITH CAUTION?

Appellant's Brief at 2.

■ ¶ 7 In his first issue, Appellant maintains that the verdict was against the weight of the evidence. Specifically, he contends that "[t]he only eye-witness [sic] who testified at the trial, John Green, gave conflicting accounts of the incident in

mistrials due to the jury being hopelessly

statements to the police, prior trials, and the current trial, as to make his testimony wholly unworthy of belief." Appellant's Brief at 3.

■ ¶ 8 The Pennsylvania Supreme Court has recently set forth the proper considerations for reviewing a challenge to the weight of the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence[,] do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 560 Pa. 308, 319–20, 744 A.2d 745, 751–52 (2000) (citations, quotation marks, and footnote omitted). Stated another way, a court may award a new trial because the verdict is against the weight of the evidence only when the verdict rendered "is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa.Super.1997) (citation omitted). More-

deadlocked.

over, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. *Widmer*, 560 Pa. at 321, 744 A.2d at 753. When reviewing the trial court's determination, we give the greatest deference to the findings of the court below.

 ¶ 9 Initially, we must address the Commonwealth's assertion that Appellant's weight of the evidence claim is unreviewable because the trial court never addressed the claim. After trial, Appellant filed timely post-sentence motions which included the issue of whether the verdict was against the weight of the evidence. At this juncture, however, the trial judge was no longer sitting as a judge and the post-trial motions were denied by operation of law. Consequently, the trial judge never addressed the weight claim presented by Appellant. However, to find this claim unreviewable, as the Commonwealth suggests, would be unjust to Appellant in that he has taken all measures necessary to properly preserve this claim for our consideration. Moreover, when a claim is denied by operation of law, the effect of the denial operates in the same manner as if the court had denied the motion itself. Accordingly, we find that for these reasons, in conjunction with the fact that this was a jury trial and all credibility determinations have been made by the jury and not by the trial judge, we are not precluded from addressing Appellant's weight claim.[3] *See Commonwealth v. Cannon,*

387 Pa.Super. 12, 563 A.2d 918, 923–24 (1989) (holding that post-trial motions for new trial and/or in arrest of judgment could be decided by judge other than trial judge where trial judge was relieved of his duties so as to prevent him from making determination on legal issues raised by defendants, and where there was a jury trial such that all issues of credibility and reasonable doubt were resolved by the jury).

¶ 10 In support of his argument, Appellant points to various inconsistencies in the record involving conflicting descriptions of the assailant that appear in reports of police officers who interviewed Green. Specifically, Officer Gramlich testified that Green advised him that six men were on the bridge and the shooter was a black male, age twenty-two, husky, light-skinned, with a slight beard. Later that same evening, Green spoke with a Detective Dougherty and allegedly told the detective that the shooter was a black male, age eighteen or nineteen, five foot eleven inches, thin but muscular, medium complexion, nappy beard with a dark denim jacket. Appellant additionally argues that, during the trials, Green repeatedly contradicted himself by stating that the shooter was wearing a jean jacket and then subsequently stating he was wearing a "hoodie".[4] Appellant also contends that Green's testimony was further rendered incredulous when, in his descriptions to the police, he never mentioned Appellant's prominent scar on the right side of his face, nor did he even give a description of the assailant

---

**3.** The concurring and dissenting opinion would preclude an appellate court from reviewing a weight of the evidence claim in the first instance even where the trial judge is no longer available to review the claim. We perceive no difference, however, in our ability to review the cold record and that of a trial judge who has had no prior connection with the case. *See Armbruster v. Horowitz*, 744 A.2d 285 (Pa.Super.1999), *appeal granted*, 563 Pa. 625, 758 A.2d 659, 2000 Pa.Lexis 1065 (April 28, 2000) (holding that circumstance where trial judge had left the bench without ruling on post-trial claim that verdict was

against the weight of the evidence was exception to the general rule that appellate court, relying solely on a cold record, may not exercise review of a weight of the evidence claim; in these exceptional circumstances, interests of justice required that weight of the evidence claim be reviewed by appellate court).

A cold record does not become any warmer in the hands of a trial judge who has no prior connection with the case than it does in the hands of an appellate judge.

**4.** "Hoodie" was defined at trial by Green as a hooded sweatshirt. N.T., 5/12/97, at 102.

to Officer Brian Sprowal, who was the first officer on the scene following the shootings. Appellant further challenges the testimony of Officer Pigford as suspect where Officer Pigford testified that Green told him later on the evening of the shootings that the shooter was the "loudmouth," N.T., 5/14/97, at 111, and Officer Pigford knew to whom he was referring but did not relay this information to homicide until thirteen days later. Thus, Appellant contends that this testimony, taken together, renders the jury's verdict against the weight of the evidence. We disagree.

¶ 11 At trial, Green consistently stated that, at the time of the shooting, the shooter was wearing a "hoodie" and identified the shooter as Appellant. He denied telling Officer Gramlich that there were six men on the bridge at the time of the shooting and that Appellant had on a jean jacket at that time. Green, however, did testify that Appellant was wearing a jean jacket at the time of the Elmwood Avenue encounter. "[I]t was solely for the [jury], as the finder of fact, to determine the credibility of witnesses and to resolve any conflicts or inconsistencies in the evidence." *Commonwealth v. Cruz–Centeno*, 447 Pa.Super. 98, 668 A.2d 536, 541 (1995). Accordingly, in light of the jury's determination that the testimony of the Commonwealth's witnesses was credible, we fail to find that the verdict was against the weight of the evidence presented at trial.

¶ 12 In his next issue, and the issue which brings the case before the Court *en banc*, Appellant asserts that the trial court erred in excluding the statement of an unidentified motorist who, within minutes following the shooting, provided a description of the gunman to Police Officer Sprowal. Appellant argues that because the statement of the motorist was made within minutes of the shooting, it was an excited utterance and, therefore, qualifies as an exception to the hearsay rule.

¶ 13 During cross-examination of Officer Sprowal, defense counsel attempted to elicit testimony regarding the information obtained from the unidentified motorist. The Commonwealth objected on grounds of hearsay. At sidebar the parties argued whether or not the motorist's statement qualified as an excited utterance. Appellant's counsel proffered that Officer Sprowal would testify that upon arriving at the scene and briefly speaking with Green, he proceeded onto the bridge where he encountered the motorist who stated that the shooter was a light-skinned black male wearing a "Guess" shirt. N.T., 5/13/97, at 17. The Commonwealth argued in opposition that without anything further there was inadequate evidence to establish the reliability of the statement, and that there was no indication that the motorist was excited when he spoke to the officer. At the conclusion of the sidebar, the court directed defense counsel to lay a foundation for the testimony.

¶ 14 Officer Sprowal then testified that he received a radio call that a shooting had occurred and that he responded to the scene "within about a minute or two." N.T., 5/13/97, at 21. Upon arriving at the scene, Officer Sprowal spent a minute with Green and then proceeded to talk with the unidentified motorist. When asked what the motorist's "condition" appeared to be, Officer Sprowal responded that the motorist was "calm" and spoke in a "matter of-fact tone of voice." *Id.* at 22–23. Defense counsel then asked Officer Sprowal if the motorist indicated that he had just recently seen something, at which point the Commonwealth again objected. At the conclusion of a lengthy sidebar discussion, the court ruled that the statement was not admissible.

¶ 15 Appellant asserts that the trial court improperly focused solely on the fact that the motorist was not excited when he spoke to Officer Sprowal. He claims that because the statement was made so close in time to the shooting, it qualifies as an excited utterance. The Commonwealth argues that the excitedness of the declarant is a necessary element that is absent in the present case. The Commonwealth further

contends that the motorist's statement is lacking the requisite indicia of reliability needed for admissibility pursuant to the excited utterance exception to the hearsay rule because there is no evidence of record that the motorist actually witnessed the shooting.

¶ 16 For a hearsay statement to qualify as an excited utterance, the statement must be:

> "[a] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence *which he perceived,* and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties."

*Allen v. Mack,* 345 Pa. 407, 410, 28 A.2d 783, 784 (1942). Admissibility pursuant to this exception requires, initially, that the declarant observe an event sufficiently startling and so near in time as to render his reflective thought process inoperable and, secondly, that the declaration constitute a spontaneous reaction to the startling event. *Commonwealth v. Cooley,* 465 Pa. 35, 41, 348 A.2d 103, 106 (1975).

*Commonwealth v. Counterman,* 553 Pa. 370, 400, 719 A.2d 284, 299 (1998) (emphasis added).[5] *See also Commonwealth v. Albrecht,* 554 Pa. 31, 52–53, 720 A.2d 693, 704 (1998) (same).

¶ 17 Our appellate courts have specifically addressed the admissibility of an unidentified bystander's statement as an excited utterance in *Carney v. Pennsylvania Railroad Company,* 428 Pa. 489, 240 A.2d 71 (1968), and in *Williamson v. Philadelphia Transportation Co.,* 244 Pa.Super. 492, 368 A.2d 1292 (1976). In *Carney,* a wrongful death and survival action was filed against Pennsylvania Railroad Company as the result of an accident where a railroad switching engine struck an automobile in which the decedents were passengers. At trial, the statement of an unidentified bystander that the engine came out too fast and had no lights on was admitted into evidence through testimony of the investigating police officer, pursuant to the *res gestae* exception to the hearsay rule.[6] Upon review, the Supreme Court found that the out-of-court assertion by the unidentified bystander did not demonstrate that the declarant actually viewed the event of which he spoke and, as such, that the admission of the statement constituted reversible error. In reaching its decision, the Court reasoned as follows:

> [T]he fundamental basis for admitting purely hearsay statements under the res gestae exception is the recognition that under certain circumstances, based on our experience, the utterances may be taken as particularly trustworthy and as an accurate reflection of what the declarant actually observed. See Wigmore, Evidence § 1747 (3d ed.) (1940). We are of the opinion that out-of-court assertions made by unidentified bystanders who may or may not have actually witnessed the litigated event are not properly admissible as part of the res gestae because their admission would not be consonant with the underlying philosophy of the hearsay rule and the res gestae exception. The mere fact that the police officer inferred from the

---

5. We note that the Pennsylvania Rules of Evidence, as adopted by our Supreme Court on May 8, 1998, did not become effective until October 1, 1998, and as such, are not applicable to this action.

6. *Res gestae* is a "generic term encompassing four discrete exceptions to the hearsay rule:

(1) declarations as to present bodily conditions; (2) declarations of present mental states and emotions; (3) excited utterances; and (4) declarations of present sense impressions." *Commonwealth v. Pronkoskie,* 477 Pa. 132, 136–37, 383 A.2d 858, 860 (1978) (footnote omitted).

statements that the declarant must have witnessed the collision, or that the declarant said he witnessed the collision, does not lend any more credence or trustworthiness to the out-of-court statements. In order to justify the admissibility of such testimony, it is incumbent upon the party seeking its admission to persuasively and convincingly demonstrate by the use of *other corroborating evidence* that the declarant actually viewed the event of which he speaks. *Id.* at 496, 240 A.2d at 75.

¶ 18 In *Williamson, supra*, this Court followed *Carney* and held that a police officer who had investigated an accident involving a bus and a pedestrian could not testify as to statements about the accident made by two unidentified persons who had alighted from the bus. This Court stated that where the defendant did not make an offer of proof as to what the bystanders actually said to the police officer at the scene of the accident, and did not establish that the two declarants actually saw the

accident, the defendant failed to show that the statements satisfied the requirement for admission of evidence under the *res gestae* exception to the hearsay rule. *See also Miller v. Keating*, 754 F.2d 507, 509 (3rd Cir.1985) (holding that, in negligence action arising from a vehicle accident, the admission of a statement as an excited utterance by an unidentified bystander to the effect that plaintiff "tried to cut in" was reversible error when bystander's personal knowledge of the vehicle accident could not be proven and the spontaneity of the statement was undetermined).

∎ ¶ 19 In the instant case, Appellant has not shown by other corroborating evidence that the statement of identity made by the unidentified motorist was made by a declarant who had actually viewed the event.[7] Even assuming that Officer Sprowal would have testified consistently with defense counsel's offer of proof that the motorist stated to him that he witnessed the shooting, this in itself is insufficient to establish the trustworthiness of

7. We note that, in an attempt to corroborate the unidentified motorist's statement, Appellant has requested at both oral argument and in a subsequent motion that two police reports which are attached to the motion and entitled "Addendum to Appellant's Brief on Re-Argument" be formally made part of the appellate record. Each report contains a description of the assailant as wearing a "Guess" sweatshirt. Appellant asserts that this documentary evidence was not part of the trial record because there was no opportunity for the evidence to be admitted since the issue concerning corroboration did not become "ripe" at trial. We, however, deny Appellant's motion as the record indicates that Appellant had sufficient opportunity to present and address these reports at the sidebar conferences. The Commonwealth, at sidebar, challenged the motorist's statement, not only on the basis of failure to show that the motorist was excited during his exchange with Officer Sprowal but, as well, on the basis of lack of any other evidence to corroborate the statement made by an unidentified individual to prove that he saw the event. We additionally note that, although Appellant asserts that the police report authored by Officer Bryan Sprowal of his brief encounter with Green supports admission of the statement of the unidentified motorist, the contents of the report, as alleged by Appellant, are inapposite to the testimony given by Officer Sprowal during Appellant's second trial and the trial at issue (notes of testimony of Appellant's first trial are not included in the certified record for our review). Appellant posits that the descriptive information of the perpetrator in his report originated from Green. However, in the notes of testimony of the trials that are available for our review, Officer Sprowal specifically states that he spoke only briefly with Green and did not obtain any identification information from him. Likewise, Green was never cross-examined about this alleged description at trial. In Police Officer Charles Vogt's statement given to a homicide detective, he, by name, identifies another alleged eyewitness to the incident who states that the shooter was wearing a grey "Guess" sweatshirt. If we were to permit Appellant to now admit these reports into evidence, where they have never appeared of record nor been mentioned in the course of at least two of three trials, we would be permitting Appellant to retry his case on appeal with the benefit of hindsight. This is especially true where Appellant, even in his brief on appeal, argues that the *only eyewitness* other than the unidentified motorist was Green. Appellant's Brief at 21.

the out-of-court statement. *Carney*, 428 Pa. at 494, 240 A.2d at 74 ("mere fact that the police officer inferred from the statements that the declarant must have witnessed the collision, or that the declarant said he witnessed the collision, does not lend any more credence or trustworthiness to the out-of-court statements.") Thus, because "the facts *as disclosed by the record* must indicate that the declarant actually witnessed the event to which his statements relate[,]" *Id.* (emphasis added), the trial court properly precluded the admission of the motorist's statement at trial. *See Commonwealth v. Priovolos*, 746 A.2d 621, 626, n. 6 (Pa.Super.2000) (providing that an appellate court may affirm the decision of a trial court when it is correct on any basis, regardless of the basis upon which the trial court relied). Because of our disposition of this issue, we need not address the parties remaining arguments pertaining to whether the unidentified motorist's demeanor, while reporting what he saw to the police, would have further prevented the admission of the statement.

¶ 20 Next, Appellant contends that, due to the doubtfulness of Green's identification testimony, trial counsel was ineffective for failing to request that the jury be instructed to receive such testimony with caution, pursuant to *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820, *cert. denied*, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954). Initially, we note that to prevail on a claim of ineffectiveness of counsel Appellant must prove that: (1) the underlying claim is of arguable merit; (2) counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) he was prejudiced by counsel's ineffectiveness. *Commonwealth v. Pearson*, 454 Pa.Super. 313, 685 A.2d 551, 555–56 (1996) (*en banc*).

¶ 21 During trial, Green testified that while on the bridge with Richardson, he and Richardson turned around to see a person approaching them from behind. Green stated that when they first turned around they thought that the man approaching them was the excessively vocal individual who had been making threats to them earlier at the scene of Skinner's identification and arrest on Elmwood Avenue. However, the man passed around them and continued walking in front of them and Green realized that this was not the same individual. Based on this testimony, Appellant argues that Green made a misidentification of the shooter and trial counsel should have requested a *Kloiber* charge. "A *Kloiber* charge instructs the jury that an eyewitness' identification should be viewed with caution where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past." *Commonwealth v. Rollins*, 558 Pa. 532, 555 n. 14, 738 A.2d 435, 448 n. 14 (1999). However, identification testimony need not be received with caution where it is positive, unshaken, and not weakened by a prior failure to identify. *Kloiber*, 378 Pa. at 424, 106 A.2d at 826. The evidence at trial reveals that Green had an unobstructed view of Appellant on the bridge, which was lit by streetlights, at a distance of three feet and has consistently identified Appellant as the shooter throughout the investigation, including identifying him from a photo array, and positively identifying him at all three trials. Green's identification of Appellant as the assailant has never wavered. Under the circumstances, a *Kloiber* charge was not required. *See Commonwealth v. Young*, 561 Pa. 34, 748 A.2d 166 (1999) (holding that where the witness who saw defendant on the road near the murder scene on the night of the murder had an unobstructed view of the defendant and was able to identify him from a photo array and again at trial, the trial court was not required to instruct the jury to receive the identification testimony with caution); *Commonwealth v. Ly*, 528 Pa. 523, 599 A.2d 613 (1991) (providing that a cautionary instruction regarding

identification testimony was not required in murder case where none of the witnesses had failed to identify the defendant on a prior occasion, and all of the identifications were positive and unequivocal). Accordingly, counsel cannot be found ineffective for failing to raise a meritless issue. *Ly*, 528 Pa. at 533, 599 A.2d at 617.

¶ 22 Judgment of sentence affirmed. Application for Post Argument Submission Pursuant to Pa.R.A.P. 2501(a) is denied.

¶ 23 McEWEN, President Judge, concurs in the result.

¶ 24 ORIE MELVIN, J., files a Concurring and Dissenting Opinion.

¶ 25 DEL SOLE, J. files a Dissenting Opinion joined by MUSMANNO, J. and TODD J.

ORIE MELVIN, J., concurring and dissenting:

¶ 1 I concur in the Majority's disposition of the excited utterance and *Kloiber* charge issues. However, I disagree this Court should address the weight of the evidence issue when it was never properly addressed by the trial court in post-trial motions or in an opinion. Accordingly, because the Majority is espousing a new rule of law for appellate review of a challenge to the weight of the evidence, I respectfully dissent.

¶ 2 I believe the trial court should first make a determination of whether the verdict is against the weight of the evidence. In *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177 (1994), our Supreme Court defined the boundaries of the appellate court and trial court functions in reviewing weight of the evidence claims:

An appellate court by its nature stands on a different plane than that of a trial court. Whereas a trial court's decision to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence, an appellate court's review rests solely upon a cold record. **Because of this disparity in vantage points an ap-**

**pellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of the trial judge.** Rather our court has consistently held that appellate review of the trial court's grant of a new trial is to focus on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the verdict.

*Brown*, 538 Pa. at 436, 648 A.2d at 1190 (emphasis added). Therefore, when the trial court has not provided any analysis regarding a challenge to the weight of the evidence, this Court has generally remanded the case for an explicit trial court determination. *See Commonwealth v. Ragan*, 439 Pa.Super. 337, 653 A.2d 1286 (1995) (holding where appellant challenged the weight of the evidence but the trial court did not address the issue, we could not take silence as an implicit denial of the claims but were required to remand for proper consideration); *See also Commonwealth v. Perez*, 444 Pa.Super. 570, 664 A.2d 582 (1995) (holding remand necessary where trial court did not address whether counsel was ineffective for failing to raise weight of the evidence claim).

¶ 3 In the present case, I recognize the trial court judge would not be able to address the weight of the evidence claim upon remand because he is no longer a sitting judge. *See Armbruster v. Horowitz*, 744 A.2d 285 (Pa.Super.1999) (Del Sole, J.) (Cirillo, P.J.E. dissenting), *appeal granted*, 563 Pa. 625, 758 A.2d 659, 2000 Pa. Lexis 1065 (April 28, 2000) (holding appellate review of weight of evidence claim proper where remand impractical now that the trial judge was no longer sitting in the Court of Common Pleas). However, in light of the Supreme Court's grant of allowance of appeal in *Armbruster*, and our limited scope of appellate review of these matters as delineated in *Brown*, I believe this case should be remanded to allow another sitting judge on

the Court of Common Pleas of Philadelphia County to address the weight of the evidence claim.

¶ 4 Moreover, the Majority's reliance on *Commonwealth v. Cannon*, 387 Pa.Super. 12, 563 A.2d 918 (1989), *appeal denied sub nom, Commonwealth v. Reap*, 525 Pa. 597, 575 A.2d 564 (1990), as support for reviewing the weight of the evidence claim is misplaced. In *Cannon*, the judge who presided over the trial and heard oral argument on post-trial motions was relieved of his duties before ruling on the motions. Another trial court judge then reviewed the transcripts and entered an order disposing of the motions. In finding this procedure was proper this Court stated:

> The court is a tribunal or judicial agency of government that is separate from the individuals who compose it; it is a continuing body that survives the death of its members. An order entered by a judge other than the one who heard the case is not thereby rendered void. The death, disqualification or absence of a judge will not deprive the surviving or remaining judges of authority to hold court and transact the business of the court and in fact to exercise all functions pertaining to the particular court.

*Id.* at 923–924 (citations omitted).

¶ 5 Contrary to the Majority, I am unable to conclude *Cannon* authorizes this Court to address the Appellant's weight of the evidence claim. Instead, I believe *Cannon* gives credence to the proposition that in the event a presiding judge is no longer available, another sitting judge on the Court of Common Pleas of that county may be assigned to conduct certain outstanding matters pending before the court. *See Bonavitacola v. Cluver*, 422 Pa.Super. 556, 619 A.2d 1363, 1366, 1368, fn. 2. (1993), *appeal denied*, 535 Pa. 652, 634 A.2d 216 (1993), (*overruled on other grounds by Johnston the Florist, Inc. v. TEDCO Construction Corp.*, 441 Pa.Super. 281, 657 A.2d 511 (1995) (*en banc* )) (where judge who presided over trial had left the bench prior to drafting an opinion addressing his order denying post-trial motions, another judge was authorized to draft opinion in support of order in light of fact the case was tried before a jury, so presiding judge had made no credibility determinations or factual findings); *See also Commonwealth v. Zietz*, 364 Pa. 294, 72 A.2d 282 (1950) (stating "[w]hen a judge before whom an action was tried is disabled, resigns or dies, a motion for a new trial may be made to, and determined by another judge of the same court or a special judge designated to act").

¶ 6 The Majority has failed to cite to any authority supporting its contention that absent a determination by the trial court, an appellate court may review a weight of the evidence claim for the first time on appeal. Because I do not favor an appellate court substituting its judgment for that of the trial court in these matters, I respectfully dissent.

DEL SOLE, J., dissenting:

¶ 1 I respectfully dissent from that portion of the Majority's decision which affirms the trial court's ruling excluding, as hearsay, a statement made to a police officer by an unidentified motorist. The Majority holds that the excited utterance exception to the hearsay rule does not apply because it was not established that the declarant actually witnessed the shooting. However, my review of the record indicates that defense counsel was prohibited from establishing whether the motorist actually witnessed the shooting when the trial court limited the testimony to the motorist's "excitability" when making the statement.

¶ 2 At trial of the matter, the court directed defense counsel to lay a foundation for the admission of the motorist's statement, whereupon the following transpired:

> Q. Officer Sprowal, what time did you receive your radio call to proceed to that scene?
>
> A. 9:55 p.m.
>
> Q. What time did you get to the scene?

A. I would say, within about a minute or two.

Q. Did you talk to the young man first or to the man up on the bridge first?

A. Young man.

Q. How much time did you spend with the young man before you went to the man on the bridge?

A. Maybe, a minute.

Q. Now, the man up on the bridge, did he identify himself as a motorist?

A. Yes.

Q. All right. Now, at that time did he indicate to you that he had witnessed something? Don't tell us what he said. Did he indicate to you that he witnessed something?

THE COURT: No. Sustained on that at this time. **Describe the excited.**

N.T., 5/13/97, at 21–22. (emphasis added.)

¶ 3 When the officer described the motorist's condition as "calm" the court sustained the prosecutor's objection to the admission of the statement as hearsay. The Majority not only fails to recognize that the officer was prohibited from establishing whether the motorist witnessed the shooting but it also finds that, even if this fact could be established, defense counsel would be required to offer corroborating evidence that the motorist witnessed the shooting. The Majority writes that "[e]ven assuming that Officer Sprowal would have testified consistently with defense counsel's offer of proof that the motorist stated to him that he witnessed the shooting, this in itself is insufficient to establish the trustworthiness of the out-of court statement." Majority opinion at 76–77. In support, the Majority cites to *Carney v. Pennsylvania Railroad Company*, 428 Pa. 489, 240 A.2d 71 (1968) and *Williamson v. Philadelphia Transportation Co.*, 244 Pa.Super. 492, 368 A.2d 1292 (1976).

¶ 4 The *Williamson* decision offers no support for the Majority's ruling because it concerned a defendant who failed to make an offer of proof as to what the bystanders said to the police at the scene to establish whether they witnessed the accident. The court ruled that it would uphold the trial court's refusal to admit this testimony "[b]ecause we do not know the substance of their statements." *Id.* at 1296. In this case, the officer was asked whether the motorist stated that he witnessed something, however the officer was not permitted to answer the question.

¶ 5 In *Carney*, a statement made by an unidentified bystander to a police officer was admitted into evidence. The officer testified that "a gentleman run [sic] up to me and excitedly said to me that this car, this engine, had come out fast and that it had no light on it." *Carney* 240 A.2d at 73. Our Supreme Court, in a plurality decision, reversed, finding that there was no evidence in the record to indicate that the unidentified bystander actually witnessed the event. The court found that it would be "mere speculation and surmise" as to whether the declarant saw the accident and that it was just as probable that the witness was repeating what others had told him. *Id.* at 74. In contrast, in this case we are uncertain whether the motorist relayed to the officer that he witnessed the shooting because defense counsel was stopped from exploring that line of inquiry.

¶ 6 The Majority cites *Carney* for the further proposition that even if the motorist claimed to have witnessed the shooting, defense counsel must offer corroborating evidence that the declarant actually viewed the event. Majority Opinion at 76. It takes support for this conclusion from a comment in *Carney* which reads: "[I]t is incumbent upon the party seeking its admission to persuasively and convincingly demonstrate by the use of other corroborating evidence that the declarant actually viewed the event of which he speaks." *Id.* at 75. This comment in *Carney*, a plurality decision, is purely dicta because the court's decision ultimately turned on the fact that the record contained no information that the declarant viewed the event. In my view, the comment in *Carney* is a misstatement of the law, and I note it has

never been referred to or relied upon by our Supreme Court. I believe that the Majority errs in relying upon it to hold that defense counsel must offer independent corroborating evidence that a declarant viewed the event before the court can consider whether the statement is an excited utterance.

¶ 7 From my research, I conclude that, where there is an unidentified declarant or a declarant who is unavailable or incapable of testifying, the matter to be corroborated is whether the event itself occurred. When considering the admission of a *res gestae* statement it is often necessary to first establish by independent proof that the underlying startling event did take place. This step is necessary in those situations where the excited utterance itself is being used to prove that the exciting event occurred. We recognized the need for such proof in *Commonwealth v. Barnes* 310 Pa.Super. 480, 456 A.2d 1037 (1983).

¶ 8 In *Barnes,* an agitated caller summoned police to his home and told the officer that the appellant entered his apartment, attacked him and stole $300. The declarant caller died of unrelated causes prior to trial and the prosecutor offered the declarant's statements into evidence as proof that the appellant attacked and robbed the declarant. This Court held that the statements should not have been admitted into evidence. We noted that there was no independent evidence of a forced entry, of bruising or injury to the declarant, and no evidence that money was missing from the declarant or that any money was found on the appellant. This Court concluded that the only evidence of the existence of a crime came from the extrajudicial statements made by the declarant and that, without corroborating evidence of the crime's existence, the statements were not admissible.

¶ 9 Likewise, in *Commonwealth v. Sanford,* 397 Pa.Super. 581, 580 A.2d 784 (1990), this Court considered not whether there was corroborating evidence of the declarant's witnessing of the event but rather whether the startling event occurred. In *Sanford,* a three-year old child made unsolicited statements to her mother indicating that she had been sexually assaulted. This Court found there was circumstantial evidence to establish that the event itself did occur and that it was "not a situation where the Commonwealth is attempting to use the excited utterance itself to prove the existence of an exciting event." *Id.* at 788. *See also* Janet Boeth Jones, Annotation, *Necessity, in Criminal Prosecution, of Independent Evidence of Principal Act to Allow Admission, under Res Gestae or Excited Utterance Exception to Hearsay Rule, of Statement made at Time of, or Subsequent to, Principal Act,* 38 A.L.R.4th 1237 (1985).

¶ 10 Our Supreme Court, in *Commonwealth v. Pronkoskie,* 477 Pa. 132, 383 A.2d 858 (1978), had occasion to consider the admissibility of statements made by a young child and the application of *Carney* to the facts. The declarant in *Pronkoskie* was incompetent to testify because of her tender years but her statements indicating her father shot and killed her mother were admitted at trial. The Supreme Court, with citation to *Carney,* reversed, finding the Commonwealth had failed to establish that the child actually witnessed the shooting. The Court noted that the child's responses during the competency examination indicated that she did not see the shooting. Thus, the Supreme Court relied on the language of *Carney* which requires a party offering a hearsay statement into evidence under the excited utterance exception to demonstrate the declarant viewed the startling event.

¶ 11 Notably, the Supreme Court did not cite to or reinforce its statement in *Carney* that corroborating evidence must be submitted demonstrating the declarant actually viewed the event. Rather, the Court appeared to retreat from the comments in *Carney,* that the statements of a declarant alone are insufficient to demonstrate that he witnessed the event. The Court in *Pronkoskie* remarked:

This is not to say that a proponent must in all cases conclusively establish that a declarant actually viewed the event to which the declaration relates. Compare *Carney v. Pennsylvania R.R. Co., supra; Williamson v. Philadelphia Transportation Company*, 244 Pa.Super. 492, 368 A.2d 1292 (1976). As Professor McCormick has noted:

> "Must the declarant meet the tests of competency for a witness? In a modified manner the requirement that a witness have had an opportunity to observe that to which he testifies is applied. Direct proof is not necessary; if the circumstances appear consistent with opportunity by the declarant, this is sufficient. If there is low probative value, however, it is usually held inadmissible if there is no reasonable suggestion that the declarant had an opportunity to observe." McCormick, Evidence § 297 at PP. 707–08 (2d ed.1972) (footnotes omitted.)

*Pronkoskie*, 383 A.2d at 862 n. 6. The Supreme Court also stated that "... [G]enerally, the proponent of the evidence need only establish that a declarant was in a position to view an incident...." *Id.*[8]

¶ 12 In the instant matter, it is clear that a startling event, a shooting, did occur and there is no need to corroborate this fact. However, defense counsel was not permitted to explore whether the motorist indicated to the officer that he witnessed the shooting. Nor was counsel permitted to question the officer regarding the circumstances surrounding the motorist's declaration because the court focused solely on evidence of his demeanor. Accordingly, I cannot join that portion of the Majority's ruling which would find the motorist's statement cannot be admitted because it was not proven that the motorist actually witnessed the event. I believe defense counsel would likely have been able to meet that test if permitted to do so.

Thus, I would remand this matter to allow defense counsel an opportunity to establish whether the motorist indicated that he witnessed the shooting. The court could then view the totality of the circumstances to determine whether the statement qualifies as an excited utterance, by looking to see if it was a spontaneous reaction to a startling event.

¶ 13 MUSMANNO, J. and TODD, J. join in this Dissenting Opinion.

---

**8.** I also note that when setting forth the new Rules of Evidence, specifically Pa.R.E. 803, dealing with hearsay exceptions, the Supreme Court did not mention any requirement of corroborating evidence in the Rule or its comment.