J-S40011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MUHAMMAD JABBAR :
:
Appellant : No. 421 EDA 2024

Appeal from the Judgment of Sentence Entered April 17, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000704-2022

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY STABILE, J.: **FILED FEBRUARY 7, 2025**

Appellant, Muhammad Jabbar, seeks review of the judgment of sentence entered by the Court of Common Pleas of Philadelphia County (trial court). Following a jury trial, Appellant was found guilty of several offenses related to a shooting in which the victim suffered numerous non-fatal injuries. Appellant now argues that the judgment of sentence must be vacated because the trial court erroneously denied his post-sentence motion, in which he argued that the verdict is against the weight of the evidence. Finding no merit in this claim, we affirm.

On August 21, 2021, at about 9 p.m., Appellant encountered the victim, Keon Battle, on the sidewalk in front of a Philadelphia convenience store. A nearby surveillance camera recorded their interactions. The video footage showed Appellant speaking with a small group of men when Battle approached. Appellant and Battle then began walking together down the

sidewalk. They started arguing, and at one point, the spat became so heated that one of the men in Appellant's group attempted to separate them.

Appellant began to walk away from Battle, but as he stepped off the sidewalk and into the street, he suddenly turned around, drew his handgun, and fired in Battle's direction. Battle ran away, and Appellant pursued him while continuing to discharge his weapon. After he had taken flight, Battle drew his own firearm and discharged it at Appellant. In all, about 15 to 20 gunshots were exchanged, and both men sustained injuries.

Appellant fled the area on foot, and when police arrived at the scene, they found Battle laying on the ground. He was treated for a total of nine gunshot wounds scattered throughout the lower extremities of his body, including his right flank, and both legs. A third person, Bernard Robinson, also was caught in the gunfire, and his injuries too were non-fatal.

Appellant was apprehended by police on September 10, 2021. The Commonwealth charged him with attempted murder, aggravated assault, firearm carried by person prohibited, carrying firearms without a license and carrying a firearm on public streets in Philadelphia, terroristic threats, and simple assault. The attempted murder and assault charges related only to Battle, as the second purported victim, Robinson, refused to cooperate with the prosecution.

One of the main issues at the subsequent jury trial was whether Appellant or Battle was the initial aggressor. As proof that Battle instigated

the shooting, Appellant called to the stand an eyewitness, and his long-time friend, Javar Reed, who was among the group standing on the sidewalk where the shooting took place. According to Reed, Appellant shot first, but it was in self-defense. Just before gunfire broke out, Reed heard Battle yell at Appellant in a threatening manner, telling him not to go anywhere. Further, at that moment, before Appellant drew his weapon, Reed saw Battle reach for the firearm tucked in his waistband.

Battle's conduct caused Reed to fear that he and Appellant were in danger, as Battle appeared to be ready and willing to do them harm so that he could "get money off" of them. *See* N.T. Trial, 12/7/2022, at 12. To Reed, it appeared that Battle was manifesting symptoms of drug abuse through his erratic behavior and irritability. Reed also was concerned by the fact that Battle was wearing a hood and a ski mask over his face despite that it was a warm summer evening. *See id*., at 5-12, 31, 36.

Additionally, Reed testified that Battle had a reputation for aggressive behavior, and that he was known to carry automatic weapons. *See id*., at 7. In fact, Reed suggested that Battle had been involved in "a lot of shootings around the neighborhood." *Id*. This reputation, as well as Battle's aggressive behavior, prompted Reed and others to try to calm Battle down. *See id*., at 11.

Appellant also testified on his own behalf, and his testimony was for the most part consistent with Reed's. He stated that he shot Battle moments after

- 3 -

collecting gambling winnings at the convenience store in order to thwart an attempted robbery. In his testimony, Appellant stated that he had known Battle previously, describing him as a "young wild goon," a "vicious person," and a "thug." *Id*., at 40. On the day in question, Appellant saw Battle walk toward him, yelling loudly, "I heard you hit the ticket. What's up old head[?]. We got something for you." *Id*., at 46.

Appellant told Battle he had nothing to give him, and the two men began walking down the sidewalk toward Appellant's car. They argued as they walked, and Appellant felt threatened because he knew that Battle was armed. Appellant then stepped off the sidewalk, into the street, at which point Battle ordered him not to go anywhere. Believing that Battle was about to become violent, Appellant drew his handgun, turned around, and started firing. *See id*., at 46-48.

Appellant fled the scene and sought medical attention for the gunshot wound to his foot. It was undisputed that Appellant lied to hospital staff about where and how the injury had been sustained. At trial, the parties stipulated that, if called, members of Appellant's community would have testified that he had a reputation as a non-violent person. *See id*., at 94.

The Commonwealth presented the testimony of the investigating officers who reported to the scene and recovered the surveillance footage of the incident. The officers opined that Appellant was the initial aggressor against Battle. Much of the Commonwealth's case was based on the video

recording of the incident, which showed Appellant drawing his weapon first, and continuing to shoot at Battle repeatedly even after it appeared that the latter party could no longer pose a threat.

The jury found Appellant guilty of the firearm charges and aggravated assault. He was acquitted as to the remaining counts, except for a bifurcated count of firearm carried by person prohibited. As to that offense, the trial court adjudicated Appellant guilty. Appellant was sentenced to a prison term of seven to 14 years on the aggravated assault count, with a concurrent prison term of six to 12 years on the count of firearm carried by person prohibited. No further penalty was imposed as to the remaining counts.

Appellant filed a post sentence motion for reconsideration, and it was denied. Although Appellant did not initially file a timely notice of appeal, he was afforded *nunc pro tunc* relief, and an appeal was filed on July 10, 2023. The appeal was later dismissed by this Court on September 18, 2023, because Appellant failed to timely file a docketing statement. Appellant was again afforded *nunc pro tunc* relief, and he filed a second notice of appeal on January 27, 2024. From there, both Appellant and the trial court complied with Pa.R.A.P. 1925.

In its 1925(a) opinion, the trial court reasoned that the judgment of sentence should be upheld because the evidence supported the jury's verdict:

> In the instant matter, Appellant was captured on surveillance footage documenting the entirety of the incident. He was seen arguing with the victim, becoming animated, and ultimately the

first to produce and fire his weapon. The victim's gun was visible only after [the victim] fired upon.

Although Appellant[] claim[ed] that he believed fleeing the scene would cost him his life, the jury was free not to find Appellant credible in his assertion [that] he acted in self-defense.

* * * *

Beyond Appellant's testimony, Mr. Reed attested to the danger he believed Mr. Battle imminently posed to Appellant. However, the Commonwealth showed the video to the jury, who were free to evaluate whether Appellant's actions fell within the purview of allowable self-defense actions. The video footage captured the entire incident from before the interactions between the parties to after the shooting. On the video, Appellant was seen gesturing with his hands and arguing back with Mr. Battle. Additionally, [a responding officer] attested to his belief that Appellant was the initial aggressor. Beyond this, Appellant conceded he turned his back on Mr. Battle despite claiming to be deathly afraid of leaving the scene. Therefore, the jurors had sufficient evidence to either believe or disbelieve Appellant and find his action of shooting Mr. Battle was not in self-defense.

Trial Court 1925(a) Opinion, 2/13/2024, at 9, 14-15.

In his brief, Appellant's sole contention is that the trial court erred in denying his post-sentence claim that the verdict is against the weight of the evidence as to the aggravated assault charge.

A trial court's ruling that the verdict is not against the weight of the evidence is subject to an abuse of discretion standard of review. *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994) (citations omitted). "A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id*.

When deciding if the verdict is against the weight of the evidence, the trial court must determine whether, "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000). A new trial should not be granted due to a "mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id*.

On appeal, the standard applicable to weight of evidence claims is much different than at the trial stage. An appellate court's task "consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Upshur*, 764 A.2d 69, 73 (Pa. Super. 2000) (citing *Widmer*, 744 A.2d at 753).

We find here that the trial court did not abuse its discretion in denying Appellant's weight of the evidence claim on the count of aggravated assault. A defendant may be found guilty of aggravated assault, as a first-degree felony, if the evidence shows that he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to human life." 18 Pa.C.S.A. § 2702(a)(1). The intent element of this offense may be "proven through circumstantial evidence and inferred from acts, conduct or attendant

circumstances." ***Commonwealth v. Fortune***, 68 A.3d 980, 983 (Pa. Super. 2013).

A defendant may assert a claim of self-defense to negate an allegation of aggravated assault. ***See Commonwealth v. Fowlin***, 710 A.2d 1130, 1132 (Pa. Super. 1998). The right to the use of lethal force in self-defense is codified at 18 Pa.C.S.A. § 505, which provides that such force is "justifiable when the actor believes [it is] necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." This right is limited in situations where the actor "can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be." 18 Pa.C.S.A. § 505(b)(2)(ii).

"If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." ***Commonwealth v. Hauser***, 18 A.3d 1128, 1135 (Pa. 2011). "Although the Commonwealth is required to disprove a claim of self-defense . . . a jury is not required to believe the testimony of the defendant who raises the claim." ***Id***. (quoting ***Commonwealth v. Carbone***, 574 A.2d 584, 589 (Pa. 1990)).

Here, while Appellant presented some evidence that he acted in self-defense when he shot Battle, it cannot be disputed that the jury heard

conflicting evidence that Appellant was the initial aggressor who used more force than necessary to defend himself. Again, Appellant drew his weapon first; he shot Battle nine times; and several of those rounds were fired after Battle had arguably taken a defensive posture.

The jury and the trial court had the further benefit of surveillance footage which captured the entire incident. This recording showed Appellant drawing his weapon first against Battle. Significantly, it also showed Appellant continuing shooting Battle several times after Battle appeared to be seriously injured and in retreat. The interpretation of the video, along with Appellant's credibility in asserting his self-defense claim, were issues for the jury to resolve. The jury's decision to reject Appellant's defense does not shock one's sense of justice, and the record in no way suggests that the trial court's denial of Appellant's post-sentence motion constituted an abuse of discretion. Thus, no relief is due on Appellant's weight of evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/07/2025