J-A07038-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TEDDY J. BERNARD | : | |
| | : | |
| Appellant | : | No. 461 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 2, 2020
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000769-2019

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED APRIL 23, 2021**

Appellant Teddy J. Bernard appeals from the judgment of sentence entered in the Court of Common Pleas of Lancaster County on January 2, 2020.  After careful review, we affirm.

The trial court set forth the facts and procedural history herein as follows:

**BACKGROUND**

On October 15, 2018, Lancaster County Children and Youth Agency forwarded information to the Lancaster City Bureau of Police ("LCBP") relating to suspected child abuse involving M.J. ("victim"). *See* Affidavit of Probable Cause. On November 26, 2018, the victim was interviewed by police and disclosed that Appellant had sexual contact with her on numerous occasions when she was 8 or 9 years of age, including penetrating her vagina with his penis and forcing her to perform oral sex on his penis. *Id*. Appellant was the ex-paramour of the victim's mother. *Id*. On

_____

[*] Former Justice specially assigned to the Superior Court.

January 17, 2019, police charged Appellant with rape of a child and related sexual offenses. *See* Police Criminal Complaint.

On October 28, 2019, Appellant appeared before the court for a jury trial on one count each of rape of a child, statutory sexual assault, involuntary deviate sexual intercourse with a child, sexual assault, indecent assault of a person less than 13 years of age, unlawful contact with a minor, corruption of minors, and indecent exposure.[1] (Notes of Testimony, Volume 1 at 88-91) ("N.T.1"). On October 31, 2019, the jury returned a guilty verdict on all counts and the court ordered a pre-sentence investigation. (Notes of Testimony, Volume 4 at 2-4, 8-9).

On January 2, 2020, the court imposed an aggregate sentence of ten years and nine months to thirty-four years['] incarceration. (Notes of Testimony, Sentencing at 25-27, 30) ("N.T.S."). The sentences imposed on each count were within the standard range of the sentencing guidelines. *Id.*; *see also* Sentencing Guidelines Worksheet. Moreover, the court imposed the mandatory minimum sentence of ten years['] incarceration for rape of a child as requested by the Commonwealth. (N.T.S. at 4, 22).

Appellant filed a post-sentence motion on January 9, 2020, alleging in part that the convictions were against the weight of the evidence. *See* Motion of the Defendant for a New Trial and Arrest of Judgment. The motion was denied on February 6, 2020. *See* Order, 2/6/20.

On March 6, 2020, Appellant timely filed an appeal to the Superior Court. *See* Notice of Appeal. On April 24, 2020, Appellant filed an Amended Statement of Errors Complained of on Appeal ("Statement"), alleging that the trial court abused its discretion: (1) when it ruled that if Appellant presented character witnesses as to the traits of law-abidingness or peacefulness the Commonwealth would be permitted to present testimony of adult women who alleged Appellant had sexually harassed them at their places of employment; and (2) in finding that the guilty verdict for the crimes of rape of a child, statutory sexual assault, involuntary deviate sexual intercourse of a child, sexual assault, indecent assault, unlawful contact with a minor, corruption of a minor and indecent exposure was not against the weight of the evidence. *See* Statement.

———

[1] 18 Pa.C.S.A. § 3121(c); 18 Pa.C.S.A. § 3122.1(a)(1); 18 Pa.C.S.A. § 3123(b); 18 Pa.C.S.A. §3124.1; 18 Pa.C.S.A. §

3126(a)(7); 18 Pa.C.S.A. § 6318(a)(1); 18 Pa.C.S.A. § 6301(a)(1)(ii); and 18 Pa.C.S.A. § 3127(a); respectively.

Trial Court Opinion, filed 5/22/20, at 1-3.

In his brief, Appellant presents the following questions for this Court's review:

1. Whether the trial court abused its discretion when it ruled that if Appellant presented character witnesses as to the traits of law-abidingness or peacefulness, then Appellee would be permitted to present testimony of adult women who alleged Appellant sexually harassed them?

2. Whether the court abused its discretion in finding that the guilty verdicts for the crimes of rape of a child, statutory sexual assault, involuntary deviate sexual intercourse of a child, sexual assault, indecent assault, unlawful contact with a minor, corruption of a minor, and indecent exposure were not against the weight of the evidence?

Appellant's Brief at 5.

It is well-settled that:

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Bracey*, 831 A.2d 678, 681 (Pa. Super. 2003) (internal quotation marks and modifications omitted). "[A] discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusions." *See Commonwealth v. O'Brien*, 836 A.2d 966, 968 (Pa. Super. 2003) (internal quotation marks omitted).

*Commonwealth v. Hernandez*, 862 A.2d 647, 650 (Pa.Super. 2004).

The Pennsylvania Rules of Evidence permit a criminal defendant to introduce evidence of his or her character or a pertinent character trait, so long as that evidence is not used to "prove that on a particular occasion the

- 3 -

person acted in accordance with the character or trait." Pa.R.E. 404(a)(1).

Such evidence may be proven by testimony about the person's reputation.

Pa.R.E. 405(a). As this Court further explained:

> In a criminal case, the defendant may offer character witnesses to testify as to that defendant's reputation in the community regarding a relevant character trait. **See** Pa.R.E. 404(a)(1); 405(a). Of course, the Commonwealth may attempt to impeach those witnesses. **Commonwealth v. Hoover**, 16 A.3d 1148, 1149 (Pa.Super. 2011) (citing **Commonwealth v. Morgan**, [ ] 739 A.2d 1033, 1035 ([Pa.] 1999)). "For example, when cross-examining character witnesses offered by the accused, the Commonwealth may test the witnesses' knowledge about specific instances of conduct of the accused where those instances are probative of the traits in question." **Hoover**, 16 A.3d at 1149-1150 (citing Pa.R.E. 405(a)). However, the Commonwealth's right to cross-examine character witnesses is not unlimited: the Commonwealth may not cross-examine a character witness about a defendant's uncharged criminal allegations, **Morgan**, 739 A.2d at 1035-1036, or a defendant's arrests that did not lead to convictions. **Commonwealth v. Scott**, [ ] 436 A.2d 607, 611-612 ([Pa.] 1981).

**Commonwealth v. Kuder**, 62 A.3d 1038, 1057-1058 (Pa.Super. 2013),

**appeal denied**, 114 A.3d 416 (Pa. 2015); **see also** Pa.R.E. 405(a)(2) ("In a

criminal case, on cross-examination of a character witness, inquiry into

allegations of other criminal conduct by the defendant, not resulting in

conviction, is not permissible.").

In presenting his first issue, Appellant has mischaracterized the trial

court's ruling on his "Motion to Preclude the Commonwealth from Introducing

Evidence of Unrelated Allegations of Sexual Harassment of Adult Women" filed

on October 16, 2019.  The motion was filed in response to discovery provided

by the Commonwealth that revealed several of Appellant's female co-workers

from two places of employment had made allegations of sexual harassment or improper sexual touching against Appellant. *See* Motion at ¶ 3. Appellant maintained their allegations were irrelevant and inadmissible at trial under Pa.R.E. 404.

Prior to trial, a hearing was held on Appellant's motion. Following oral argument, the trial court ruled as follows:

> THE COURT: What I indicated in chambers is that the Commonwealth would not be permitted to cross-examine any of your character witnesses with regard to any of the specific instances or conduct that occurred, none of which apparently has resulted in a conviction. And they would also not be able to call witnesses to testify to the specific unrelated allegations of sexual harassment; however, they would be able to call in rebuttal witnesses to rebut [Appellant's] character as to peacefulness and/or being a law-abiding person essentially by asking those witnesses whether they know of others in the community who know [Appellant] and are they aware of [Appellant's] reputation in the community for being a peaceful person and, if so, what is it.
> So that was the [c]ourt's ruling.
>
> Mr. Stretton: It is my understanding if I do not present character witnesses then Ms. Mansfield will not present adverse character witnesses under those circumstances?
>
> THE COURT: Right, I would not allow her to do so.

N.T. 10/28/19, at 10-11.

Defense counsel asked for an opportunity to clarify with Appellant whether "he agrees for me not to call the character witnesses based on Your Honor's ruling[,]" and the trial court granted counsel the opportunity to do so. *Id*. at 12. A colloquy ensued at which time defense counsel and the trial court both questioned Appellant regarding counsel's recommendation that in light

of the foregoing, character witnesses would not be called to testify on Appellant's behalf. *Id*. at 13-16.

Appellant's arguments to the contrary, the trial court's above statements evince the court specifically stated it would not permit the Commonwealth to call witnesses to testify as to specific, unrelated allegations or to cross-examine Appellant's character witnesses regarding any specific conduct which had not resulted in a conviction. In fact, at no time did the trial court rule that the Commonwealth's proposed witnesses would be permitted to testify about their allegations of sexual harassment against Appellant.

Simply put, the trial court held that if Appellant offered character testimony pertaining to his general reputation as a peaceful and law abiding citizen in community, the Commonwealth could rebut said testimony with witnesses who could be asked "whether they know of others in the community who know [Appellant] and are they aware of [Appellant's] reputation in the community for being a peaceful person and, if so, what is it." In so ruling, the trial court did not abuse its discretion. *See* Pa.R.E. 405; *Kuder*, *supra*. Therefore, despite the fact that during the colloquy, defense counsel stated "the issue is preserved for appellate review, if we're unsuccessful, I have a right to challenge the Judge's ruling up to the Superior Court if we have come to that point[,]" *Id*. at 15, Appellant's appellate argument in support of his erroneous characterization of the trial court's holding does not entitle him to relief.

Appellant next challenges the weight of the evidence to support his convictions. Initially, Appellant properly preserved his weight of the evidence claim in a timely, post-sentence motion for a new trial, which the trial court denied. *See Commonwealth v. Stiles*, 143 A.3d 968, 980 (Pa.Super. 2016) (noting that a defendant "must present his challenge to the weight of the evidence to the trial court for a review in the first instance").

Appellant argues that M.J.'s failure to timely report the conduct, coupled with the "extreme number of contradictions" in the testimony the Commonwealth's witnesses presented at trial and Appellant's lack of a criminal record, show that the "convictions are such that they should shock the conscience of this Court, and shock fundamental justice." Appellant's Brief at 11, 28. Appellant states there is no physical evidence or reports to therapists or psychiatrists with whom M.J. treated in middle school and high school to corroborate her allegations. Appellant further stresses these allegations were made at a time when M.J. was grappling with mental health and gender identity issues. *Id*. at 26-28.

It is axiomatic that:

> "A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Clay*, ... 64 A.3d 1049, 1054-55 ( [Pa.] 2013). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id.* at 1055. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is

imperative so that right may be given another opportunity to prevail." *Id.* The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. *Id.* at 1054. The appellate court reviews a weight claim using an abuse of discretion standard. *Id.* at 1057.

At trial, the jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses. "Issues of witness credibility include questions of inconsistent testimony and improper motive." **Commonwealth v. Sanchez**, ... 36 A.3d 24, 27 ( [Pa.] 2011) (citation omitted). A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit. **See Commonwealth v. Rivera**, ... 983 A.2d 1211, 1220 ( [Pa.] 2009) (stating that "the trier of fact, in passing upon the credibility of witnesses, is free to believe all, part, or none of the evidence") (citation omitted).

**Commonwealth v. Jacoby**, 170 A.3d 1065, 1080 (Pa. 2017).

In response to Appellant's weight claim, the trial court opined as follows:

Appellant next alleges the court abused its discretion in finding that the guilty verdict on each count was not against the weight of the evidence, because the evidence was so contradictory as to render any verdict based on this evidence unreliable. *See* Statement.

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court, which will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013). "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2015) (quoting *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003)).

"The trial judge may not grant relief based merely on some conflict in testimony or because the judge would reach a different conclusion on the same facts." *Commonwealth v. Blakeney*, 946 A.2d 645, 653 (Pa. 2008)). The jury is free to believe "all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Smith*, 985 A.2d 886, 897 (Pa. 2009). Questions about inconsistent testimony go to the credibility of the witnesses, and it is solely for the jury to resolve

any conflicts or inconsistencies. *Commonwealth v. Upshur*, 764 A.2d 69, 74 (Pa. Super. 2000).

In *Upshur*, the appellant claimed the jury's verdict finding him guilty of murder of the first degree was against the weight of the evidence because the only eyewitness to the crime had given conflicting accounts of the incident in statements to the police and during trial, which made his testimony "wholly unworthy of belief." 764 A.2d at 72. The Superior Court disagreed, stating it was solely for the jury to determine credibility of the witnesses and resolve conflicts or inconsistencies in the evidence. *Id*. at 74. The verdict was not against the weight of the evidence because the jury determined the testimony of the Commonwealth witness was credible. *Id*.

A trial court's exercise of discretion in determining whether a verdict is against the weight of the evidence is one of the "least assailable reasons for granting or denying a new trial." *Commonwealth v. Dupre*, 866 A.2d 1089, 1102 (Pa. Super. 2005). Appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. *Smith*, 985 A.2d at 897. The function of an appellate court is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider de novo the underlying question of the weight of the evidence. *Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009).

In the present case, the victim testified at trial and established a history of sexual abuse committed by Appellant against her when the victim was between 8 and 10 years old. (N.T.1 at 106-12, 120, 133-41, 146-47, 158-62). At the time, Appellant was the boyfriend of the victim's mother. *Id*. at 106. Although Appellant did not live with the victim and her mother, he was at the victim's house almost every day and would stay the night. *Id*. at 107, 148-49.

When she was 8 years old, Appellant told the victim to come upstairs into her mother's bedroom while her mother was at the grocery store. (N.T.1 at 107-08). There, Appellant told the victim to take off her clothes and he had sexual intercourse with her, putting his penis inside her vagina. *Id*. at 108. The victim could not pinpoint the dates or number of times this happened, but stated Appellant had sexual intercourse with her once a week and it was more than 10 times. *Id*. at 111, 154-55, 158-59. The victim usually laid down and Appellant got on top of her. *Id*. at 110. However, Appellant sometimes made the victim get on top of him during sexual intercourse when she got older. *Id*. at 111. The

victim recalled seeing Appellant with a condom wrapper and she remembered it hurt when he put his penis inside her vagina. *Id*. at 140-41.

The victim further stated that when Appellant called her into the room he would also touch her face and breast area above and under her clothes. (N.T.1 at 109-10). On one occasion, Appellant had the victim perform oral sex on him. *Id*. at 111-12. Appellant also kissed the victim on the lips and on her vagina. *Id*. at 137-38. Appellant told the victim to keep these things between the two of them. *Id*. at 141. The victim stated her mother was never home when these incidents occurred and she never told her mother when it was happening because she did not really understand what was happening. *Id*. at 118-20.

The victim testified that she later realized Appellant's actions were wrong while watching a TV show that mentioned the word rape. (N.T.1 at 119-20, 162). She did not tell her mother because she thought she would get in trouble. *Id*. at 120. However the victim did tell a group of her friends, including Sarah in the seventh grade and Claire in the ninth grade. *Id*. at 121-22, 156-58. The victim told the school counselor in the eleventh grade that Appellant had raped her. *Id*. at 123-24.  After being admitted to Roxbury Hospital because she became very depressed and suicidal, the victim disclosed to Nurse Brian. *Id*. at 125-26. The victim also told Detective Ryan Hockley by writing in a note that Appellant had raped her. *Id*. at 132-34.

Claire McIlvaine ("McIlvaine") confirmed she was friends with the victim and they were close. (Notes of Testimony, Volume 2 at 112-13) ("N.T.2"). In September 2016, the victim told McIlvaine she was assaulted by her mother's boyfriend for a few years from the time she was 9 years old, and did not understand what had happened until sex ed in school. *Id*. at 114. McIlvaine remembered the victim telling her about this on more than one occasion. *Id*. at

Shana McGill ("McGill"), the victim's mother, stated that she and Appellant dated from 2005 to 2010 or 2011. (N.T.1 at 172-77). According to McGill, Appellant sometimes stayed overnight while they were dating, he lived with McGill and the victim for around one year, and there were times when Appellant and the victim were left alone together. *Id*. at 174-176, 194-201. Ultimately, McGill and Appellant broke up. *Id*. at 180.

McGill related that one or two years after the relationship ended the victim first disclosed to McGill that Appellant had "touched her." (N.T.1 at 187). When McGill asked what she meant, the victim refused to provide further details and changed the subject. *Id*. at 187, 204. McGill noticed a change in the victim at

the age of 10 or 11 years old when the victim became more angry, less outgoing, more emotional, more forgetful, and more guarded. *Id*. at 191-92. The changes also affected her grades. *Id*. at 192.

Last school year, McGill was called to school because the victim was very emotional and was talking about committing suicide. (N.T.1 at 180-81). The victim had written a note which McGill read that stated the victim was raped. *Id*. at 182-83. That same day, the victim was hospitalized due to her desire to self - harm. *Id*. at 183-84. Later, McGill took the victim to the police station. *Id*. at 188-89. While at the station, McGill called Appellant and left messages stating she needed to talk to him about the victim. *Id*. at 189. Appellant never called back, which McGill thought was odd because he always called her back. *Id*. at 189-90.

Suzanne Presley ("Presley"), a school psychologist, testified that she spoke with the victim in the fall of 2018 to conduct a crisis risk assessment because the victim was threatening suicide. (N.T.1 at 213-14). During the assessment, the victim revealed that she had been sexually abused when she was 8 years old. *Id*. at 214-15. The victim further stated she did not realize what happened until she watched a TV show and heard about sexual abuse. *Id*. at 215. Although the victim was able to explain to Presley what happened, the victim said she could not tell her mother about the assault so Presley had the victim write it down. *Id*. at 216. Because Presley was concerned the victim might hurt herself, the victim was referred to crisis that same day. *Id*. at 215-17. Presley then reported the information to ChildLine. *Id*. at 216.

Brian Brewer ("Brewer"), a nurse who assessed the victim at Roxbury Treatment Center on October 4, 2018 because of suicidal tendencies, testified that the victim appeared to be pretty depressed and reported she was sexually abused by her mother's former boyfriend starting at the age of 8. (N.T.2 at 5-7, 11, 16). Brewer reported the victim's statements to the state. *Id*. at 19. Mustafa Kaleem ("Kaleem"), a psychiatrist who treated the victim at Roxbury, also testified that the victim reported she had been sexually molested by her mother's former boyfriend and she was having flashbacks. *Id*. at 96, 100, 104-05. The victim was discharged to Philhaven for further treatment on October 19, 2018. *Id*. at 101.

Dr. Philip Rodenberger ("Rodenberger"), an attending psychiatrist with Wellspan Philhaven Hospital, testified that he evaluated the victim on November 1, 2018. (N.T.2 at 46- 49). The victim reported that she was sexually abused multiple times by her mother's former boyfriend when she was 8 years old and she

was having "violent flashbacks." *Id*. at 49-50. Based on his examination, Rodenberger diagnosed the victim with post traumatic stress disorder with mood and behavioral instability. *Id*. at 54. The psycho-social stressors included divorce of her biological parents, history of sexual abuse, and dealing with transgender issues. *Id*. at 55. Rodenberger did not find that the victim was delusional, psychotic, or making things up. *Id*. at 54,64-65, 68.

Detective Ryan Hockley ("Hockley"), LCBP, received this case through a Children and Youth Agency referral. (N.T.2 at 151). Because the victim was at an inpatient facility, she was not forensically interviewed. *Id*. at 155.[3] When Hockley interviewed the victim on November 26, 2018, the victim wrote down on a note what she testified to at trial. *Id*. at 155-57.

Appellant testified at trial and stated he met McGill in 2006, they lived on the same block, and they were in a casual relationship. (N.T.2 at 201). Appellant moved into McGill's home in 2006 or 2007, and acknowledged the victim resided there as well. *Id*. at 202-03, 221-22. Appellant stated he moved out in 2008 when their relationship ended. *Id*. at 203. Appellant denied ever touching the victim improperly. *Id*. at 210-11.[4]

In his Statement, Appellant claims there was no corroborating evidence of the victim's allegations, there was no timely reporting, there was no physical evidence, the victim did not allege a specific date or time for the incidents, the victim had serious ongoing psychiatric issues, and there were a number of contradictions in the testimony. However, it was solely for the jury to determine the credibility of the witnesses, and to resolve conflicts or inconsistencies in the evidence. *See Upshur*. The jury chose to believe the testimony of the victim and disbelieve Appellant's testimony, after evaluating all of the concerns raised by Appellant in his Statement.

Furthermore, there was additional evidence that tied Appellant to the crimes. Appellant was in a relationship with McGill at the time he committed these crimes, giving him access to the victim. There were also times when Appellant was alone with the victim, giving him the opportunity to commit these crimes. McGill noted a change in the victim around the time the victim testified that Appellant was raping and assaulting her, as the victim became more angry, less outgoing, more emotional, more forgetful, more guarded, and her grades began to suffer. The victim also testified that she disclosed what Appellant had done to multiple people over a period of time, and these disclosures were

corroborated by McIlvaine, Presley, and several professionals who examined the victim.

In this case, the jury's verdict was not so contrary to the evidence as to shock one's sense of justice, nor was it against the weight of the evidence. Thus, Appellant's claim must fail.

____

[3] Julie Stover ("Stover"), a medical provider at the Lancaster County Children's Alliance, testified that she physically examine the victim on October 8, 2019, and nothing stood out to either confirm or deny sexual abuse. (N.T.2 at 135, 139, 142-45). However, Stover stated a normal exam would be expected when the victim of a sexual assault was 8 years old at the time of the alleged assault and the examination did not occur until the child was 17 years old. *Id*. at 145, 149.

[4] Cassandra Claiborne ("Claiborne") testified she met Appellant in 2008 and they started living together in 2009. (N.T.2 at 181-83). Appellant is her fiancé and they have four children together. *Id*. at 185, 188. In response to the victim's testimony that one incident occurred at Claiborne's house, and Claiborne returned home while they were there, Claiborne stated she never returned home and saw the victim with Appellant. *Id*. at 138-39, 151, 188. However, Claiborne did acknowledge there were times she was working when Appellant was not, and she would not have been home with Appellant. *Id*. at 192.

Trial Court Opinion, filed 5/22/20, at 6-12.

As previously noted, inconsistencies in testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence. **See Jacoby**, 170 A.3d at 1080. Although Appellant has highlighted some inconsistencies in the Commonwealth's evidence, the jury was permitted to resolve any such discrepancies in the Commonwealth's favor. Assessing all of the evidence presented at trial according to the governing principles cited above, and in light of the trial court's thorough analysis of this claim, we simply cannot conclude that the trial court abused its discretion when it found that

the jury's verdict did not shock its sense of justice. Consequently, Appellant's weight challenge fails. Accordingly, we uphold Appellant's convictions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/23/2021