J-A17040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 824 EDA 2022 |

Appeal from the Order Entered March 2, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001160-2021

BEFORE: PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED AUGUST 19, 2022**

D.M. ("Father") appeals from the March 2, 2022 order in which the trial court found by clear and convincing evidence that Father was a perpetrator of child abuse against his son, J.M. ("Child"), and that Child was dependent. After careful review, we affirm.

The trial court aptly set forth the relevant facts and procedural history as follows:

> The Philadelphia Department of Human Services ("DHS") first became aware of this family on November 3, 2021, when DHS received a General Protective Services ("GPS") report alleging that on November 3, 2021, J.M.'s Mother presented at Children's Hospital of Philadelphia ("CHOP") Karabots Pediatric Care Center requesting medical attention for J.M., who was four years old. At that time, J.M. disclosed that Father physically abused him. J. M. was observed with two black eyes, a gash to his left check, a gash above his left eye, a lump on his forehead, bruised and swollen

---

[*] Retired Senior Judge assigned to the Superior Court.

cheeks, and red welts on both sides of his chest and abdomen. The report alleged that Mother and Father were the primary caregivers for J.M. The GPS report was valid.

On November 3, 2021, DHS learned that Father was arrested for physically abusing J.M. J.M confirmed the allegations in the GPS report to DHS and to Philadelphia Police Officers later that day. On November 4, 2021, Mother successfully obtained a Protection from Abuse (PFA) Order against Father, and J.M. and his sibling returned to her care. On November 9, 2021, DHS learned that Mother had posted Father's bond and secured his release from jail.

On November 10, 2021, DHS obtained an Order of Protective Custody ("OPC") for J.M. and his sibling and placed them in the care of their adult sibling to ensure their safety. At the November 12, 2021 shelter care hearing, the Court lifted the OPC and ordered the temporary commitment to DHS to stand.

Trial Court Opinion, April 8, 2022 ("TCO"), at 1-2 (citations omitted).

The trial court held an adjudicatory and child abuse hearing for Child and his sibling on March 2, 2022. Both Father and Mother appeared but did not testify. There, counsel for DHS called as a witness Children's Hospital of Philadelphia ("CHOP") physician Dr. Maria Aldana-Sierra, who was qualified as an expert in the field of pediatric child abuse and testified that in preparation for her CHOP consultation report, she spoke to Mother and to the primary team who were treating Child's injuries. N.T. at 13. Dr. Aldana-Sierra testified that, based upon the information she reviewed, including her review of Child's medical records and her physical examination of Child, he had suffered "multiple injuries to several parts of his body which were consistent with inflicted trauma or physical abuse." *Id*. at 14.

As reported by Dr. Aldana-Sierra, when she interviewed Mother, Mother stated that upon arriving home in the evening from a nursing school class on November 2, 2021, she found Child sitting in a corner with injuries and Father sitting on the sofa with a belt in his lap. *Id*. at 17. In her conversation with Dr. Aldana-Sierra, Mother further indicated that Child told her that "daddy beat my ass" because he did not know his alphabet letters. *Id*. at 18. Dr. Aldana also reviewed photos of Child's injuries that had been taken by Mother and testified that these injuries were consistent with those exhibited at CHOP the next day; these injuries included linear abrasions, or pattern injuries, which may be caused by an object, such as a belt or ruler, leaving an impression on the body. *Id.* at 22. According to Dr. Aldana-Sierra, Child experienced and expressed, during her physical examination of him, substantial pain, especially in the areas of his eyes and right lower chest, where he had significant swelling. *Id*. at 22-23, 25. She determined, within a reasonable degree of medical certainty, that Child had suffered nonaccidental trauma child abuse. *Id*. at 26.

At the hearing, DHS also called Ms. Amber Daniels, who was assigned to investigate the GPS and CPS reports[1] involving the family. She testified that both reports indicated that Child presented initially to CHOP with the

---

[1] The GPS and CPS reports contain specific allegations that must be investigated by the assigned DHS investigator. The reports *sub judice* contained a description of the injuries observed at CHOP together with allegations of inappropriate discipline and substance use by Father as caregiver, and enumerated allegations of beating, hitting, and punching.

above-stated injuries, and that Father beat, hit, and punched Child because he did not know his homework subject. *Id.* at 32-34. Ms. Daniels stated that as part of her investigation, she interviewed Mother, Father, Child, and Child's sibling; both children told her that Child sustained injuries as a result of Father beating him with his hands and his belt. *Id*. at 35. Mother spoke to the DHS investigator, Ms. Daniels, at CHOP on November 3, 2021, and reported to her that on the night she returned home and found Child looking battered and bruised, Father told her that he beat Child because he would not do his homework correctly and did not understand his letters. *Id*. at 36. Mother, who also works as a medical assistant at Einstein Hospital, reported that she checked Child and gave him a bath and some pain medication, and laid in bed with him throughout the night, with plans to take him to his primary care provider in the morning. *Id*. at 37. The investigator spoke to Father, also on November 3, 2021, at home and in the company of police officers; Father admitted that he beat Child with a belt and his hands and mentioned that he had been drinking that day because of a rough day at work and "some type of tenant issue" that he had. *Id.* at 39.

The trial court summarized the testimony regarding the events that followed:

> Ms. Daniels testified that Father was arrested on November 4, 2021, and charged with aggravated assault, simple assault, and endangering the welfare of children. On November 4, 2021, [Child] was discharged from the hospital to his adult sibling under a Safety Plan. The terms of the Safety Plan were that the children

would reside with their adult sibling, and that there would be no contact with Mother or Father until DHS informed them otherwise.

After Mother obtained a temporary Protection From Abuse (PFA) Order on behalf of Child against Father, the children were returned to Mother's care. However, Ms. Daniels testified that the children were only in Mother's care for five days before an [Order of Protective Custody] was obtained on November 10, 2021. DHS learned that Mother bailed Father out of jail, which raised concerns that Mother would allow Father to have contact with the children, particularly Child. Ms. Daniels testified that because Mother bailed Father out of jail, she was impeding the DHS investigation.

When Father was released on bail, a criminal stay-away order was issued for Child against Father. For these reasons, as well as the severity of Child's injuries, Ms. Daniels felt it would be a great risk for the children [to] return to Mother's care at that time, thus an OPC was obtained to ensure their safety. When the OPC was obtained, Child and his sibling were returned to the care of their adult sibling. Ms. Daniel[]s testified that the GPS report was valid, and the CPS report was indicated. Father was determined to be the perpetrator of abuse against Child, and the category of abuse was "causing bodily injury to a child through any recent act or failure to act."

TCO at 6-7 (citations omitted).

The final witness at the adjudication and child abuse hearing was Ms. Kayla Thurman, the community umbrella agency ("CUA") case manager. Ms. Thurman testified that in the course of her investigation she spoke with Mother, who related to her the events, as described above, that occurred on the evening of November 2, 2021, when she returned home from her nursing school class and Father admitted to her that he had beaten Child. N.T., 3/2/22, at 68. Ms. Thurman inquired as to why Mother bailed Father out of jail following the incident and Mother explained that Father pays most, if not all, of the bills at home and she needed him to continue to do that. *Id*. The

CUA case manager also spoke to Father, who told her that he did not realize what he was doing during the time he was beating Child, and that he was in shock and disbelief at Child's condition following the beating. *Id*. at 72. Ms. Thurman testified that the children have since been reunited with Mother and are presently in her home and doing well. *Id*. at 75. She stated that Child's sibling has supervised visits with Father for one hour a week at the sibling's discretion, and that of eight visits offered since the inception of the visitation, Father has attended two of them. *Id*. at 75-76. She stated that as of her most recent visit to see the children at Mother's home, Mother and Father had not communicated. *Id*. at 78.

The trial court found clear and convincing evidence to adjudicate Child dependent based on present inability and to find child abuse as to Father. Father filed a timely notice of appeal and concise statement of errors complained of on appeal on March 24, 2022.

Father raises the following issues on appeal:

1. Did the [trial court] rule[] in error by allowing the children's statements into the record when there was no Tender Years motion to determine if those statements could be allowed into the record. [Did the trial court rule in error in a]lso allowing those statements into the record when the children were not available to be questioned about those statements?

2. Did the [trial court] rule in error that the Philadelphia City Solicitor's Office [met] its burden of proof that there should be a finding of child abuse under the [C]hild [P]rotective [S]ervices [Law], 23 Pa.C.S. [§§ 6301-6387]?

Father's Brief at 4.

Our standard of review of a finding of child abuse in a dependency case is as follows:

> The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.
>
> *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted); *see also In the Interest of L.Z*., 111 A.3d 1164, 1174 (Pa. 2015). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G*., 855 A. 68, 73-4 (Pa. Super. 2004) (citation omitted).
>
> While dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301-6375, the [CPSL] controls determinations regarding findings of child abuse, which the juvenile courts must find by clear and convincing evidence. *See In the Interest of J.R.W*., 631 A.2d 1019, (Pa. Super. 1993). As the Supreme Court explained in *In the Interest of L.Z.*, *supra* at 1176, "[as] part of [a] dependency adjudication, a court may find a parent to be the perpetrator of child abuse," as defined by the CPSL.

*In The Interest of T.G.*, 208 A.3d 487, 490 (Pa. Super. 2019).

Under Section 6381(d) of the Child Protective Services Law (CPSL), while the petitioning party in a dependency action is required to demonstrate the evidence of child abuse by clear and convincing evidence, the identity of the abuser need only be established by *prima facie* evidence. 23 Pa.C.S. § 6381(d); *In re L.Z*., 111 A.3d at 1179. Section 6381(d) establishes the

rebuttable presumption for finding child abuse by a parent or person responsible for the Child's care:

> Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S. § 6381(d).

'Child abuse' is defined as "intentionally, knowingly, or recklessly…causing bodily injury to a child through any recent act or failure to act" or "creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act." 23 Pa.C.S. § 6303(b.1). 'Bodily injury' is defined as "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S. § 6303(a).

Under Sections 6341(c) and (d) of the CPSL, after a child has been found dependent, the court shall proceed to make a proper disposition of the case and "[i]n disposition under subsections (b) and (c) all evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition." 42 Pa.C.S. §§ 6341(c) and 6341(d)(1)(i). This evidence may include expert testimony and reports to aid in the decision for disposition. Pa.R.J.C.P. 1509(A) and (B).

Before this Court, Father avers, first, that the trial court erred in admitting hearsay statements by Child and his sibling into the record without

first conducting a hearing to determine whether the tender years[2] exception would apply to permit introduction of the children's statements into evidence. Father's counsel acknowledges that had such hearing been held, it is likely that the hearsay statements of Child and his sibling would have been admitted, but asserts nevertheless that the trial court erred by failing to conduct a hearing. Father's Brief at 8.

In the initial stages of the hearing, Father's counsel voiced his objection to the introduction into evidence of Dr. Aldana-Sierra's child consultation report (Exhibit DHS-2), as well as to the GPS report (Exhibits DHS-5) and the CPS report (Exhibit DHS-6); each report, it was averred, contained hearsay evidence in the form of statements by Child and his sibling, as well as from Mother, as to how and at whose hands the injuries to Child occurred. N.T. at 7-12. Father's counsel stipulated to Dr. Aldana-Sierra's qualification as an expert witness and the trial court permitted her testimony pending its

_____

[2] The tender years statute creates an exception to the hearsay rule in recognition of the fragile nature of young victims of sexual abuse; it allows statements made by a child victim of enumerated offenses **not otherwise admissible by statute or rule of evidence** to be admitted into evidence if the statements are relevant and sufficiently reliable and if the child either testifies at the proceeding or the court determines that testimony would result in serious emotional distress such that the child is deemed "unavailable." 42 Pa.C.S. § 5985.1.

determination as to whether the child consultation report was admissible under Pa.R.E. 803(6), the business record exception.[3]

We begin our analysis by noting that this exception specifically applies to the admissibility of the medical record; however, the statements contained within the record still need to fulfill the hearsay within the hearsay rule. *See* Pa.R.E. 805. Under Rule 805, "hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule. *Id.*

Here, the CHOP consultation report was properly admitted into evidence pursuant to the business record exception. As noted by the trial court:

---

[3] Under the Pennsylvania Rules of Evidence, hearsay evidence is inadmissible unless it meets an exception set forth in the Rules of Evidence or one prescribed by the Pennsylvania Supreme Court or by statute. Pa.R.E. 802.

Under the business record exception, a record of an act, event, or condition is admissible hearsay if the following exist:

(A)  the record was made at or near the time by – or from information transmitted by someone with knowledge;
(B)  the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
(C)  making the record was a regular practice of that activity;
(D)  all these conditions are shown by the testimony of the custodian or another qualified witness, a by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
(E)  the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

- 10 -

Dr. Aldana-Sierra wrote and prepared the CHOP Consultation Report marked as DHS-2. Dr. Aldana-Sierra testified that the childrens' statements were given to her in preparation for her CHOP consultation report. She testified that it is general practice for an expert in her field to interview the victim child and anyone else who was present when the injuries were discovered or may be able to provide an explanation for how the victim child sustained the injuries. The information Dr. Aldana-Sierra testified to is contained in her Consultation Report. Dr. Aldana-Sierra's findings and report were recorded in the regular course of business. Additionally, a qualified expert witness may rely on hearsay when forming opinions and making determinations if experts in their particular field would reasonably rely on those kinds of facts or data in forming an opinion. Dr. Aldana-Sierra relied on [Child's] medical records related to his admission, the statements she received from her interviews with Mother and the children, notes from [Child's] visit with his primary care provider, as well as medical evidence of [Child's] injuries in her determination that [Child] sustained injuries consistent with child abuse.

TCO at 15. Moreover, where, as in this case, the record is a medical record, statements made within the record – or hearsay within hearsay – may be admissible under the medical diagnosis or treatment exception to the rule against hearsay, Pa.R.E. 803(4).[4] The comment to Rule 803(4) provides that "[s]tatements as to causation may be admissible, but statements as to fault

_____

[4] Pa.R.E. 803(4) excepts from the hearsay rule a statement that:

(A)   is made for – and is reasonably pertinent to – medical treatment or diagnosis in contemplation of treatment; and

(B)   describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

Pa.R.E. 803(4).

- 11 -

or identification of the person inflicting harm have been held to be inadmissible." Pa.R.E. 803(4), *Comment* (citing **Commonwealth v. Smith**, 681 A.2d 1288 (Pa. 1996)). Thus, within the CHOP consultation report some, but not all of the children's statements are admissible pursuant to this exception: their statements regarding the injuries being the result of a beating with a belt and hands are admissible as evidence of the cause of the injury, while statements directly identifying Father as the perpetrator of the abuse are not admissible since they are not pertinent to Child's medical diagnosis or treatment.

We find, however, that the statement by Mother to Dr. Aldana-Sierra identifying Father as the person who beat Child with his hands and a belt are admissible nonetheless; Mother's statement as to what Child reported to her is admissible under Pa.R.E. 803(2), the excited utterance exception, and her statement reporting said excited utterance to Dr. Aldana-Sierra was in turn admissible under the hearsay exception for an opposing party's statement, as she was a party to the dependency proceeding. See Pa.R.E. 803(25)(A) (statement by an opposing party and offered against her shall not be excluded by rule against hearsay). Under the excited utterance exception, hearsay is permitted if it is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). According to Pennsylvania case law,

> [f]or a hearsay statement to qualify as an excited utterance, the statement must be a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering

- 12 -

emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Commonwealth v. Upshur*, 764 A.2d 69, 75 (Pa. Super. 2000) (citations and quotations omitted).  Here, both Child's and his sibling's statements to Mother were made shortly after Child experienced, and his sibling witnessed, the beating by Father, and fit squarely into the parameters of the exception. We discern no error, therefore, in the trial court's determination that the children's statements to Dr. Aldana-Sierra, including those regarding the identity of the perpetrator, in preparation for her consultation report were relevant and admissible;[5]  the trial court did not err in its determination to admit the report under the above-mentioned hearsay exceptions in lieu of holding a tender years hearing to determine admissibility of the children's statements.

In his second issue, Father challenges the trial court's finding of child abuse; Father avers that, assuming the trial court excludes the statements made by Child and his sibling, DHS has thus failed to establish by clear and convincing evidence that he was the perpetrator.  Father's Brief at 15.  In addition, Father argues that clear and convincing evidence has not been

_____

[5] [W]e may uphold a decision below if there is any proper basis for the result reached; thus, our affirmance may be based on different grounds from the trial court.  *In re Adoption of R.J.S.*, 889 A.2d 92, 98 (Pa. Super. 2005) (citations omitted).

shown that Child suffered the requisite "substantial pain." *Id*. at 14-15. **See** 23 Pa.C.S. §§ 6303(a) and 6303(b.1). Here, the elements of child abuse were sufficiently established by clear and convincing evidence in the form of Dr. Aldana-Sierra's testimony and her consultation report. As previously stated, the trial court properly admitted the entirety of Dr. Aldana-Sierra report, including the information obtained from Mother regarding the identity of the perpetrator of child abuse. Furthermore, and as stated above, under Section 6381(d), the fact of abuse alone was sufficient to establish **prima facie** evidence of abuse by Father, as the parent or person responsible for Child's welfare at the time of the incident. Father not only failed to offer any evidence whatsoever to rebut the evidentiary presumption that he inflicted the abuse, but he in fact admitted to Ms. Daniels, who interviewed him as a normal part of her DHS investigation of the CPS and GPS reports, as well as to Mother and Ms. Thurman, that he hit Child with a belt and his hands because he was angry that Child did not understand his letters.

Father's assertion that there was not clear and convincing evidence that Child experienced "substantial pain," is completely without merit. Father avers that the CT scan taken at CHOP showed no orbital or skeletal fractures, and the only medication administered to Child was Motrin. Father's Brief at 14. However, as the trial court noted, "Dr. Aldana-Sierra testified that [Child] expressed pain during the evaluation in areas where he had significant bruising and swelling," and she "testified that [Child] experienced substantial pain" as a result of his injuries. TCO at 12. At the hearing, she described

Child's reactions during his examination when she palpated him: "[s]o, especially the areas where [Child] had significant swelling, so on both of his eyes and it was also swelling to the right lower side of his chest – so he expressed pain. He said aye, aye when we were palpating those parts." *Id*. at 23. Dr. Aldana-Sierra testified that linear abrasions visible in the photographs that Mother took on the night of the incident were consistent with linear patterns or impressions from a belt, supporting the history that had been provided to her. *Id*. at 22.

Finally, we note that to the extent that Father also challenges the admissibility of statements of Child and Child's sibling made to Ms. Daniels, the DHS investigator, which are contained within the GPS and CPS reports, the trial court's admittance of such evidence was, at most, harmless error in the context of the court's determinations.

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimus*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. The Commonwealth has the burden of proving harmless error beyond a reasonable doubt.

**Commonwealth v. Radecki**, 189 A.3d 441, 461 (Pa. Super. 2018) (citations and quotations marks omitted; some formatting).

Based on the foregoing, we conclude that the trial court did not abuse its discretion or commit legal error in its adjudication of dependency and its finding of child abuse as to Father.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2022